**REVERSE, RENDER and REMAND; Opinion Filed December 18, 2012.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01637-CV

## VIRGILIO AVILA AND UNIVISION TELEVISION GROUP, INC., Appellants

### V.

## F.B. LARREA, Appellee

On Appeal from the 95th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-10828

# OPINION

Before Justices Bridges, Richter, and Lang
Opinion By Justice Lang

This accelerated interlocutory appeal arises from a defamation action by appellee F.B. Larrea against appellants Virgilio Avila and Univision Television Group, Inc. ("Univision"). Appellants moved to dismiss the action pursuant to the Texas Citizens Participation Act ("TCPA"), which provides for dismissal of actions involving the exercise of certain constitutional rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–27.011 (West Supp. 2012). The trial court held a hearing on appellants' motion to dismiss and, in an order dated within thirty days after that hearing, stated in part (1) limited discovery should be allowed on certain issues, to be completed within ninety days of the date of the order, and (2) "a continuation of the current hearing shall be set within 30 days thereafter, or as soon thereafter as this Court's docket conditions will permit." Subsequently,

appellants filed this appeal pursuant to the TCPA's provision that states, in part, if a trial court does not "rule on" a motion to dismiss under the statute within thirty days after the hearing on the motion, "the motion is considered to have been denied by operation of law and the moving party may appeal." *Id.* § 27.008.

In two issues on appeal, appellants assert the trial court reversibly erred by (1) failing to grant appellants' motion to dismiss on the merits and (2) authorizing discovery on appellants' motion to dismiss and continuing the hearing on the motion after the thirty-day period prescribed by the TCPA. Additionally, Larrea challenges this Court's jurisdiction over this appeal.[1]

We conclude this Court has jurisdiction over this appeal. Further, we decide in favor of appellants on their first issue. Therefore, we need not address appellants' second issue. The trial court's order is reversed and we render judgment granting appellants' motion to dismiss pursuant to the TCPA and remand this case to the trial court for consideration of damages and costs pursuant to that act. *See id.* § 27.009(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Univision is a Spanish-language television station group that, through a subsidiary, owns and operates a local station, KUVN Channel 23 ("KUVN"), which broadcasts in the Dallas/Fort Worth area. Avila is a reporter for KUVN. Larrea, an attorney who practices law in Dallas, asserted in his petition that defamatory statements pertaining to him were made by appellants in two broadcasts that were televised by Univision on May 2, 2011, and May 3, 2011, respectively, and posted on Univision's Internet website (the "broadcasts"). According to Larrea, the broadcasts were "patently and substantially false" and appellants acted with malice because they "knew the defamatory

---

[1] Presubmission, Larrea filed a motion to dismiss this appeal for want of jurisdiction. After considering the motion, appellants' response thereto, and Larrea's reply to appellants' response, another panel of this Court denied Larrea's motion without opinion. Subsequently, Larrea filed his appellate brief, in which he asserts the same jurisdictional challenge and arguments set forth in his motion to dismiss this appeal, plus an additional jurisdictional argument not previously asserted by him.

–2–

statements were false or published the statements with reckless disregard of their truth or falsity." Further, Larrea contended the broadcasts were "extremely injurious" to his reputation. Larrea sought to recover actual and "special" damages.

Appellants filed a general denial answer and a timely motion to dismiss pursuant to TCPA section 27.003. *See id.* § 27.003. In their motion to dismiss, appellants asserted in part that Larrea's action "is based on, relates to and/or is in response to [appellants'] exercise of the right of free speech and/or the right to petition." Further, appellants stated the broadcasts "related to a matter of public concern regarding, without limitation, (i) economic well-being; (ii) the government; (iii) community well-being; (iv) a public figure; and/or (v) a service in the marketplace." Appellants requested that the trial court dismiss Larrea's action with prejudice and award appellants "all of their allowable damages and costs" pursuant to TCPA section 27.009. Attached to appellants' motion to dismiss were an affidavit of Avila, video recordings of the broadcasts subtitled in English, and transcripts of the broadcasts in both English and Spanish.

Larrea filed a response to appellants' motion to dismiss and his affidavit. In his response, Larrea asserted in part that by enacting the TCPA, Texas had followed the lead of other jurisdictions "in leveling the playing field in David versus Galiath [sic] scenarios involving the First Amendment." According to Larrea, the enactment of the TCPA was "for the purpose of addressing and discouraging strategic lawsuits against public participation" (emphasis original) and it was ironic that "a large corporation is using this Act in defending itself against an ordinary citizen." Additionally, Larrea asserted his affidavit "establishes by clear and specific evidence a prima facie case for libel against the Defendants, as is required by [TCPA] Section 27.005(c)."[2]

_____

[2] In his affidavit, Larrea stated he is an attorney licensed to practice law in Texas. He stated that two of the persons featured in the broadcasts, Alene Saucedo and Roxana Ramirez, had "hired" him respecting legal matters. Additionally, Larrea stated in part in his affidavit

1. The broadcast that was posted on the *worldwide-internet* was entitled "Abogado en Dallas, *Estafa* indocumentados"; Translated: Lawyer in Dallas **Defrauding** the Undocumented?" At no time, to the best of my knowledge, did either of my clients ever use the word *"fraud"* or *"fraudulent"* in any of their statements during their interviews. With respect to the subject

Subsequent to the filing of Larrea's response, appellants filed a brief in support of their motion to dismiss. In that brief, appellants asserted in part that they were entitled to dismissal pursuant to the TCPA because Larrea had not established by "clear and specific evidence" a prima facie case for every element of his cause of action, as required by the statute. Specifically, according to appellants, Larrea had presented no evidence "(1) that the alleged defamatory statements contain false statements of fact; (2) that [appellants] acted with 'actual malice;' or (3) explaining why Larrea is not a public figure." Further, appellants contended,

> As to the falsity of the allegations by Larrea's former clients: when, as here, a media defendant reports allegations of wrongdoing, the plaintiff is required to prove that the allegations were either (1) not made at all; or (2) not accurately reported in order to support a defamation claim. The accuracy of the underlying allegations under investigation is immaterial. Larrea, of course, cannot meet his burden to prove that the allegations in the Broadcasts were either not made, or mischaracterized, because the Broadcasts document his former clients making the complaints on camera.

(citations omitted).

---

of the report, this was a word introduced on the worldwide-internet and associated with the Larrea name _exclusively_ by Univision that mislead and suggested that F.B.Larrea was a fraud.

2. . . . The reporting framed, the distribution of business cards with fraud and impropriety.

The Broadcast depicts an unknown individual, purporting to represent the City of Dallas, stating that a person handing out business cards on a public sidewalk is in violation of the city-code [sic]. The individual then cites an ordinance that is completely inapplicable to handing out business cards. The narrative carelessly, maliciously, and with blatant disregard to the truth asserts that what I was doing was illegal. The broadcaster in fact stated this when he confronts the woman on the sidewalk and demanded that the woman admit that she knew that what she was doing "was illegal".

3. The Broadcast characterized the case of [Saucedo's husband] Felix Alcantara as a "nightmare" and suggested that I was responsible for his problems. . . .

4. Mrs. Saucedo alleged that I had never visited her husband in jail. Univision and Mr. Avila would have known, through a cursory check of the record, that such a visit had indeed occurred. Instead of mentioning this fact the broadcaster merely allows me to respond to Mrs. Saucedo's claim and leave it up to the viewers to decide who is telling the truth after the broadcaster had stated that I was being investigated by the City of Dallas and the State Bar for fraud and illegal activities.

5. At another point, Ms. Saucedo states that she has conclusive proof from C.P.S. that her husband had been exonerated and that I had not used it to get the criminal case dismissed. This false claim strongly suggests that I was derelict in my performance as his attorney. . . . The broadcaster does not mention in the broadcasts that such a claim was false and the prosecuting attorney would not have dismissed the case simply because CPS had chosen not to take further action. Defendants broadcasted this false claim with knowledge of their falsity or with reckless disregard as to its truth. . . .

6. The statement was made by the broadcaster that after Mr. Alcantara had released me the Public Defender disposed of his case in 1 week when I had not been able to in 3 months.

7. Later in the broadcasts, Univision tells the viewer "Many complaints have been forwarded to the State Bar in Austin on behalf of different clients of mine, five since 2009. Here the viewer is led to believe that these complaints confirmed professional misconduct when they had not broadcast assertions that the State Bar would not confirm whether or not they were investigating me for misconduct, suggesting to the public that they probably were. Invitations to report transgressions to the State Bar of Texas immediately following after quoting me that; "I had nothing to worry about and that I had done everything right," contextually encouraging viewers to file grievances.

I am neither a public figure nor have I thrust myself into the public lime light. The allegations broadcasted against me were false and Univision and its broadcasters broadcasted this knowing they were falsehoods and with reckless disregard as to their truth. As a result of these defamatory falsehoods I have been harmed and damaged both personally and financially.

(emphasis original).

-4-

The trial court held a hearing on appellants' motion to dismiss on October 18, 2011. In addition to asserting the arguments described above, counsel for Larrea requested for the first time at the hearing that the trial court allow discovery respecting appellants' motion to dismiss. Specifically, counsel for Larrea offered into evidence an email he stated was sent by him to the general manager of KUVN prior to the time the broadcasts were aired in which counsel for Larrea informed KUVN that Saucedo's allegation that Larrea never visited her husband in jail was "a lie." Counsel for Larrea requested that the email be admitted into evidence "for the limited purpose of establishing good cause for allowing limited discovery in this case." Counsel for appellants objected to the email being admitted into evidence "because the statute makes it quite clear that this is not to be an evidentiary hearing." Additionally, counsel for appellants argued the TCPA "has a comprehensive scheme" and "the scheme is quite clear that it is to—designed to quickly dispose of these cases and not to have protracted discovery of the type that is contemplated." The trial court admitted the email into evidence "on the issue of good cause for discovery" and otherwise sustained appellants' objection.

The trial court rendered an order dated November 16, 2011, allowing limited discovery and providing for a continuation of the hearing as described above. Specifically, the order allowed limited discovery "on the issues of (a) the falsity of the statements involved and (b) whether the defendants acted with actual malice." Additionally, the order stated that it "determines no other issues under Chapter 27 by implication."

This appeal timely followed.[3] *See id.* § 27.008.

---

[3] Prior to submission of this appeal, this Court granted a motion by appellants for temporary relief, staying all discovery in the trial court until further order of this Court.

## II. DISMISSAL PURSUANT TO TCPA

### *A. Standard of Review*

We review issues of statutory construction de novo. *See, e.g., Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). In construing statutes, our primary objective is to give effect to the legislature's intent. *Id.* (citing *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009)). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *Tex. Lottery Comm'n*, 325 S.W.3d at 635.

### *B. Applicable Law*

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. The TCPA provides a means for a defendant, early in the lawsuit, to seek dismissal of certain claims identified in the act, including defamation. *See id.* §§ 27.003, 27.008. The act is to be "construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b). "Exercise of the right of free speech" is defined by the act as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Matter of public concern" includes, *inter alia*, an issue related to "a good, product, or service in the marketplace." *Id.* § 27.001(7)(E).

"If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." *Id.* § 27.003(a). Such motion must be filed not later than the sixtieth day after the date of service of the legal action unless the court extends the time for filing on a showing of good cause.

*Id.* § 27.003(b). On the filing of a motion to dismiss pursuant to section 27.003(a), all discovery in the legal action is suspended until the court has ruled on the motion to dismiss, except as provided by section 27.006(b). *Id.* § 27.003(c). Section 27.006(b) states, "On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion." *Id.* § 27.006(b).

A hearing on a motion under section 27.003 must be set not later than the thirtieth day after the date of service of the motion unless the docket conditions of the court require a later hearing. *Id.* § 27.004. Section 27.005 of the TCPA, titled "Ruling," states, in part, as follows:

> (a) The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.
>
> (b) Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:
>
> > (1) the right of free speech;
> > (2) the right to petition; or
> > (3) the right of association.

*Id.* § 27.005(a)–(b). A trial court "may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). In determining whether a legal action should be dismissed under the TCPA, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

Section 27.008 of the TCPA is titled, "Appeal." *Id.* § 27.008. That section provides

> (a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.
>
> (b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by

Section 27.005.

(c) An appeal or other writ under this section must be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by Section 27.005 expires, as applicable.

*Id.*

Finally, where a court orders dismissal of a legal action under the TCPA, the court shall award to the moving party (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions. *Id.* § 27.009(a).

### C. Analysis

#### 1. Jurisdiction Over This Appeal

We begin by addressing Larrea's challenge to this Court's jurisdiction over this appeal. *See Minton v. Gunn*, 355 S.W.3d 634, 639 (Tex. 2011) (appellate court must determine whether it has subject matter jurisdiction to consider appeal before reaching merits); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) (subject matter jurisdiction is essential for court to have authority to decide case). Appellate courts generally have subject matter jurisdiction only over appeals from final judgments and have jurisdiction over appeals of interlocutory orders only when that authority is explicitly granted by statute. *See, e.g., Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (citing *Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex.1998)). Statutes authorizing interlocutory appeals are strictly construed because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011); *Jennings v. Wallbuilder Presentations, Inc.*, 378 S.W.3d 519, 523 (Tex. App.—Fort Worth 2012, no pet.) (construing TCPA provision respecting right to interlocutory appeal). "By the rule of strict construction, 'it is not meant that the statute shall be

stintingly or even narrowly construed, but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used.'" *Jennings*, 378 S.W.3d at 523 (quoting Norman J. Singer & J.D. Shambie Singer, 3 *Statutes and Statutory Construction*, § 58:2, at 110 (7th ed. 2008)).

Larrea contends there is no right to interlocutory appeal in this case because (1) appellants have not met their burden to show the broadcasts were a result of their right to exercise free speech or right to petition, thus invoking the provisions of the TCPA, and (2) the trial court ruled on appellants' motion to dismiss within thirty days as required by the TCPA and the motion was not denied by operation of law.

Appellants respond that Larrea may not argue for the first time on appeal that appellants failed to show by a preponderance of the evidence that Larrea's action is based on their right to speak and petition freely. Further, appellants contend "ample" evidence exists for this Court to conclude appellants made such a showing. Additionally, appellants assert that because the trial court failed to "rule on" their motion to dismiss as required by TCPA section 27.005(a), their motion to dismiss was denied by operation of law and the trial court's order is appealable under section 27.008(a).

The record does not show Larrea's argument respecting appellants' "burden to show the broadcasts were a result of their right to exercise free speech or right to petition" was raised in the trial court. However, because that argument pertains to this Court's jurisdiction, we will address it here. *See Minton*, 355 S.W.3d at 639; *cf. Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46 (jurisdictional question cannot be waived). As described above, the TCPA defines "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). In turn, the TCPA's definition of "[m]atter of public concern" includes "an issue related to . . . a good, product, or service in the marketplace." *Id.* § 27.001(7)(E).

Appellants assert in part that "Larrea's legal services, which he provides to the Dallas

marketplace," constitute a "service in the marketplace," and the broadcasts were related to that service. Larrea does not address section 27.001(7)(E) or explain how it is inapplicable. The record shows Larrea stated in his affidavit that he is an attorney and was hired to handle legal matters for clients in Dallas. Further, Larrea's affidavit demonstrates (1) the alleged false statements in the broadcasts pertain to his legal services and (2) his action is based on the broadcasts. We conclude the record shows by a preponderance of the evidence that the communications at issue, i.e., the broadcasts, were made in connection with a matter of public concern, i.e., Larrea's legal services, and that the broadcasts are the basis for Larrea's action. *See id.* §§ 27.001(3), 27.001(7)(E), 27.005(b); *see also Wilson N. Jones Mem'l Hosp. v. Ammons,* 266 S.W.3d 51, 61–62 (Tex. App.—Dallas 2008, pet. denied) (analyzing whether party fell within category listed in healthcare statute based on plain language of statute); *Barron v. Cook Children's Health Care Sys.,* 218 S.W.3d 806, 808–09 (Tex. App.—Fort Worth 2007, no pet.) (same); *cf. Jennings,* 378 S.W.3d at 527 ("Our analysis of this issue of statutory construction 'must begin with the language of the statute itself,' . . . and '[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'") (quoting *Bread Political Action Comm. v. Fed. Election Comm'n,* 455 U.S. 577 (1982)). Thus, the record shows by a preponderance of the evidence that the broadcasts constituted an "[e]xercise of the right of free speech" and Larrea's action was one "based on, relating to, or in response to" a party's exercise of the right of free speech. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). Accordingly, we conclude appellants have met their burden to show the TCPA is applicable. *See id.* § 27.003(a).

Next, we address Larrea's contention that because the trial court "did rule within the 30-day time period" and "did not deny the motion to dismiss," the trial court's order in question is "interlocutory and not appealable." Larrea argues in part

Significantly, Section 27.008 does not state that if the court does not "grant or deny"

the motion within 30 days, it is deemed to have been denied by operation of law. Clearly, that is not the meaning of the statute because the statute specifically provides that the court may allow discovery relevant to the motion before it rules on the motion to dismiss.

According to Larrea, "[t]he [trial] court's order, allowing additional time for discovery was in keeping with the statute's specific provisions, was within the court's discretion, and is a non-appealable interlocutory order." *See id.* § 27.006(b) ("On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion.").

Appellants contend

[S]ection 27.005, entitled "Ruling," is the key to the correct construction—indeed, the only plausible construction—of Chapter 27. Section 27.005(a) requires that the trial court *"must rule on a motion [to dismiss]* not later than the 30th day following the date of the hearing on the motion." (emphasis added.).

Sections 27.005(b) and (c) then show what it means to "rule on [the] motion." . . . Simply put, within 30 days of the hearing on a motion to dismiss, the trial court must grant the motion and dismiss the action under section 27.005(b) or deny the motion under section 27.005(c). There's no third way. And because Chapter 27's text is clear, it is determinative of Legislative intent.

In this case, the trial court failed to "rule on [the] motion," as required by section 27.005(a). Because it did so, [appellants'] Motion to Dismiss was denied by operation of law and the trial court's order is appealable under Chapter 27's expedited-interlocutory-appeal provision.

(citations omitted).

Section 27.005(a) clearly states that the court must "rule on" a motion to dismiss under the TCPA within thirty days following the date of the hearing on the motion. *Id.* § 27.005(a). Only two options are described in section 27.005: to "dismiss" the legal action or "not dismiss" it. *Id.* § 27.005(b)-(c). Further, in contrast to the statute's specific allowance for extensions of time under certain circumstances in sections 27.003(b) (extension for time to file motion to dismiss) and 27.004 (extension as to setting of hearing), there is no provision for extension of the thirty-day period in section 27.005(a). *Id.* § 27.005(a). Additionally, section 27.006(b), which allows for "specified and

limited discovery" on a showing of good cause, does not provide for any extension of the statutory time periods in connection with that discovery. *Id.* § 27.006(b).

Based on the plain text of the TCPA, we conclude the trial court did not "rule on" appellants' motion to dismiss for purposes of section 27.005(a) when, by its order of November 16, 2011, it decided, within thirty days after the hearing of October 18, 2011, to allow discovery and continue the hearing. *See id.* § 27.005(a). Moreover, the trial court's order made clear that, other than the above-described rulings on discovery, it "determines no other issues under Chapter 27 by implication." Because neither section 27.006(b), which allows for limited discovery, nor any other provision in the TCPA provides for an extension of the mandatory thirty-day period for a ruling pursuant to section 27.005(a) when a hearing on a motion to dismiss has been conducted, we conclude appellants' motion to dismiss was denied by operation of law and this interlocutory appeal is timely brought pursuant to TCPA section 27.008(a). *See id.* § 27.008(a). Consequently, we conclude we have jurisdiction over this appeal. *See Koseoglu*, 233 S.W.3d at 840.

## 2. No Evidence as to Falsity

Now, we address appellants' first issue, in which they contend the trial court reversibly erred by failing to grant their motion to dismiss on the merits because "there is no evidence—much less clear and specific evidence—of the falsity of any statement that [appellants] made." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (to defeat motion to dismiss, party must establish prima facie case for each essential element of claim by "clear and specific evidence").

Larrea responds "[t]here was clear and specific evidence that the statements made in the broadcasts that are the basis of this lawsuit are false." Further, Larrea asserts (1) there is "no or insufficient evidence" that he is a "public figure" or that appellants were "reporting a matter of

-12-

public concern"[4] and (2) he "has established a prima facie case that the gist or sting of the publication is false and defamatory and were certainly published in such a way that they created a substantially false and defamatory impression by omitting material facts and juxtaposing facts in a misleading [way]."

To maintain a defamation cause of action against appellants, Larrea was required to prove appellants "(1) published a false statement; (2) that was defamatory; (3) while acting with either actual malice, if he is considered a public official or public figure, or negligence, if he is a private individual, regarding the truth of the statement." *Associated Press v. Boyd*, No. 05-05-01192-CV, 2005 WL 1140369, at *2 (Tex. App.—Dallas May 16, 2005, no pet.) (mem. op.) (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)); *see Bentley v. Bunton*, 94 S.W.3d 561, 586–87 (Tex. 2002) (defining "defamatory" as "injurious to reputation"); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 73.001–.006 (West 2011). Additionally, section 73.004(a) of the Texas Civil Practice and Remedies Code provides

> A broadcaster is not liable in damages for a defamatory statement published or uttered in or as a part of a radio or television broadcast by one other than the broadcaster unless the complaining party proves that the broadcaster failed to exercise due care to prevent the publication or utterance of the statement in the broadcast.

TEX. CIV. PRAC. & REM. CODE ANN. § 73.004(a). "We construe an allegedly defamatory publication as a whole in light of the surrounding circumstances and based upon how a person of ordinary intelligence would perceive it." *Main v. Royall*, 348 S.W.3d 381, 389 (Tex. App.—Dallas 2011, no pet.) (citing *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)).

Actual malice generally must be proven by "clear and convincing" evidence. *See Turner*, 38

---

[4] We concluded above that the record shows by a preponderance of the evidence that the broadcasts were made in connection with a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(E). Therefore, we need not revisit Larrea's argument respecting whether appellants were "reporting a matter of public concern."

–13–

S.W.3d at 116; *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 420–21 (Tex. 2000). Further, a media defendant can defeat a defamation cause of action by establishing the "substantial truth" of the broadcast in question. *See McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990). "[A] media defendant's reporting that a third party has made allegations is 'substantially true' if, in fact, those allegations have been made and their content is accurately reported." *Neely v. Wilson*, 331 S.W.3d 900, 922 (Tex. App.—Austin 2011, pet. granted) (citing *McIlvain*, 794 S.W.2d at 16); *accord Grotti v. Belo Corp.*, 188 S.W.3d 768, 775 (Tex. App.—Fort Worth 2006, pet. denied); *UTV of San Antonio, Inc. v. Ardmore, Inc.*, 82 S.W.3d 609, 612 (Tex. App.—San Antonio 2002, no pet.); *KTRK Television v. Felder*, 950 S.W.2d 100, 106 (Tex. App.—Houston [14th Dist.] 1997, no writ); *see Boyd*, 2005 WL 1140369, at *2 (citing *Dolcefino v. Randolph*, 19 S.W.3d 906, 918 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).

"To be actionable, a statement must assert an objectively verifiable fact." *Main*, 348 S.W.3d at 389 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990); *Bentley*, 94 S.W.3d at 580). "[A]n opinion, like any other statement, can be actionable in defamation if it expressly or impliedly asserts facts that can be objectively verified." *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App.—Tyler 2008, pet. denied). Whether a publication is an actionable statement of fact is a question of law. *Id.* (citing *Bentley*, 94 S.W.3d at 580).

The TCPA does not define "clear and specific evidence." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). Further, Larrea contends "the burden and quantum of proof" respecting his prima facie case is either "clear and convincing evidence" or "a preponderance of evidence," depending on whether or not he is a public figure. However, appellants contend we "need not attempt to lay out the contours of 'clear and specific evidence' here" because no evidence at all has been proffered on the element of falsity, and thus "Larrea wholly failed to carry his burden under *any* evidentiary standard." (emphasis original).

–14–

In his affidavit, Larrea asserts the following constituted actionable false statements: (1) the broadcasts depicted an unidentified individual purporting to represent the City of Dallas who stated that a person handing out business cards on a public sidewalk is in violation of the city code and cited "an ordinance that is completely inapplicable to handing out business cards"; (2) the broadcasts included a statement by Saucedo that Larrea did not visit her husband in jail and Larrea's response that he did make such a visit, but did not include a statement by the broadcaster that Saucedo's allegation was untrue; (3) the broadcasts included Saucedo's statement that "she has conclusive proof from C.P.S. that her husband had been exonerated and that [Larrea] had not used it to get the criminal case dismissed," which falsely suggested Larrea was "derelict" in his representation of Alcantara; (4) the title of the broadcasts posted on the Internet, as translated, was "Lawyer in Dallas Defrauding the Undocumented?," but the clients featured in the broadcasts did not use the word "fraud"; (5) the broadcasts characterized the case of Alcantara as a "nightmare" and "suggested" Larrea was "responsible for his problems"; (6) the broadcaster stated that after Alcantara released Larrea as his attorney, a public defender disposed of his case in one week when Larrea had not been able to do so in three months; (7) the broadcasts misled viewers to believe that complaints forwarded to the State Bar of Texas "confirmed professional misconduct"; and (8) "[t]he narrative carelessly, maliciously, and with blatant disregard to the truth asserts that what [Larrea] was doing was illegal" and "[Avila] in fact stated this" when he "confront[ed]" a woman handing out business cards on a sidewalk and "demanded that the woman admit that she knew that what she was doing 'was illegal.'"

First, it is unclear from the record whether Larrea is complaining as to appellants' broadcasting of statements by Saucedo and the unidentified person purporting to represent the City of Dallas, or whether Larrea's complaints as to those statements pertain solely to Avila's reporting those statements. To the extent Larrea seeks to hold appellants liable for alleged defamatory statements in the broadcasts by persons other than appellants, the record does not show Larrea

–15–

addressed, or produced evidence in the trial court respecting, any failure of appellants "to exercise due care to prevent the publication or utterance" of any such statement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.004(a). Further, to the extent Larrea complains about appellants' reporting of allegations contained in those statements, Larrea does not demonstrate that the record shows appellants reported any allegations inaccurately. *See Neely,* 331 S.W.3d at 922; *Grotti,* 188 S.W.3d at 775; *UTV of San Antonio, Inc.,* 82 S.W.3d at 612; *KTRK Television,* 950 S.W.2d at 106; *Boyd,* 2005 WL 1140369, at *2.

Second, the record shows the title of the broadcast posted on the Internet, "Lawyer in Dallas Defrauding the Undocumented?," was phrased as a question and was not posed in a manner that suggested otherwise. *See Blackwell v. Wise,* No. 11-99-00224-CV, 2000 WL 34235121, at * 4 (Tex. App.—Eastland July 20, 2000, no pet.) (not designated for publication) (concluding question on which defamation claim was based was not "statement of fact" where record did not indicate question was posed as such). Larrea does not explain, and the record does not show, how that title asserted an objectively verifiable fact. *See Main,* 348 S.W.3d at 389; *Bentley,* 94 S.W.3d at 580. Moreover, the transcript shows Saucedo stated in part in the broadcast that "[Larrea's] office is full of lies." "[A] media defendant's reporting that a third party has made allegations is 'substantially true' if, in fact, those allegations have been made and their content is accurately reported." *Neely,* 331 S.W.3d at 922.

Third, we consider Larrea's complaint that the broadcasts characterized the case of Alcantara as a "nightmare" and "suggested" Larrea was responsible for his problems. The record shows Avila stated at the beginning of the May 3 broadcast, "The case of Mr. Felix Alcantara ended in a nightmare for his family." The use of a term that is "by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder" or "a loose and figurative term employed as a metaphor or hyperbole" constitutes a protected expression of opinion. *Palestine*

*Herald-Press Co.*, 257 S.W.3d at 511. In making a determination as to whether a publication is an actionable statement of fact or a protected expression of opinion, we must look at the entire context in which the statement was made. *Id.* at 509. In the case before us, the context demonstrates "nightmare" was used as a figurative term, an opinion, and cannot be objectively verified. *See id.* Accordingly, Avila's statement described above is not actionable. *See Main*, 348 S.W.3d at 389. Further, to the extent appellants "suggested" Larrea was "responsible for [Alcantara's] problems," the record shows Saucedo stated Larrea did not do what his office represented he would do respecting her husband's case. *See Neely*, 331 S.W.3d at 922 ( media defendant's reporting that third party has made allegations is "substantially true" if "those allegations have been made and their content is accurately reported").

Fourth, Larrea complains "[t]he statement was made by the broadcaster that after Mr. Alcantara had released me the Public Defender disposed of his case in 1 week when I had not been able to in 3 months." The record shows that in the May 2 broadcast, Saucedo stated she paid Larrea to represent her husband and was told "that they were going to see him in jail and that they were going to get him out in three months." Avila stated, "The three months went by and her husband did not get out of jail." In the May 3 broadcast, Avila stated, "Felix Alcantara dismissed Larrea as his representative and the case was taken by a public defender, who settled the case in a week and Alcantara was deported to Mexico." Larrea does not explain and the record does not show how Avila's statements respecting the disposal of Alcantara's case were false.

Fifth, we address Larrea's contention respecting complaints about him to the State Bar of Texas. Specifically, Larrea asserted in his affidavit

> Univision tells the viewer [m]any complaints have been forwarded to the State Bar in Austin on behalf of different clients of mine, five since 2009. Here the viewer is led to believe that these complaints confirmed professional misconduct when they had not broadcast assertions that the State Bar would not confirm whether or not they were investigating me for misconduct, suggesting to the public that they probably

were. Invitations to report transgressions to the State Bar of Texas immediately following after quoting me that; "I had nothing to worry about and that I had done everything right," contextually encouraging viewers to file grievances.

The record shows Avila stated in the May 3 broadcast that complaints about Larrea had been sent to the State Bar of Texas. Immediately thereafter, Larrea stated on camera

> The allegations and evidence were presented before the Texas bar, and they sent me a letter and it requires by law that I have to respond to the bar and I responded with documents with my version of what happened, and the bar decided whether there were problems with my services or not, and basically, they didn't find any.

Then, Avila stated

> As a result of our request for information, recently the bar association responded saying that Faustino Larrea has no disciplinary cases with that institution and that they cannot comment on pending complaints or active investigations, nor did they confirm whether there is any investigation.

Later in the same broadcast, Avila reported that Alcantara and Ramirez are preparing a formal complaint against Larrea before the State Bar of Texas. Further, Avila stated, "The attorney told us he has nothing to worry about and that he is doing everything properly." Then, Avila provided contact information for making complaints to the State Bar of Texas. We cannot conclude the record shows false statements by appellants respecting complaints to the State Bar of Texas.

Sixth, Larrea contends "[t]he narrative carelessly, maliciously, and with blatant disregard to the truth asserts that what [Larrea] was doing was illegal" and "[Avila] in fact stated this" when he "confront[ed]" a woman handing out business cards on a sidewalk and "demanded that the woman admit that she knew that what she was doing 'was illegal.'" The record shows that the May 2 broadcast included the video recording of a woman telling Avila she worked for Larrea's office "handing out cards." Then, the broadcast showed a purported representative of the City of Dallas who stated that the woman's activity is "a clear violation of the city ordinance, Section 3 dash one, which prohibits the delivery of advertising in public ways." In the May 3 broadcast, Avila stated that Ramiriz's case began with a business card the woman offered "right in a public way . . . an action

-18-

qualified by the Municipality of Dallas as illegal." Video footage of the City of Dallas representative from the May 2 broadcast was shown as Avila spoke. Next, Avila asked Larrea about the woman, and Larrea told Avila "I don't know what you're talking about but there are situations where we do share business cards." Then, the broadcast showed Avila approaching the woman a second time. At that point, the woman said she did not work for Larrea. Avila stated to her, in part, "you know that it is illegal to hand out cards in public, who do you work for. . . ."

Even assuming without deciding that Avila's statement to the woman who allegedly handed out business cards asserted an objectively verifiable fact, the context of the broadcast shows the statement was made as part of Avila's report pertaining to the allegations of the City of Dallas representative, and the record does not show Avila reported those allegations inaccurately. *See* *Neely*, 331 S.W.3d at 922; *Grotti*, 188 S.W.3d at 775; *UTV of San Antonio, Inc.*, 82 S.W.3d at 612; *KTRK Television*, 950 S.W.2d at 106; *Boyd*, 2005 WL 1140369, at *2.

Finally, we address Larrea's argument that he "has established a prima facie case that the gist or sting of the publication is false and defamatory and were certainly published in such a way that they created a substantially false and defamatory impression by omitting material facts and juxtaposing facts in a misleading [way]." In support of that position, Larrea cites the supreme court's conclusion in *Turner* that "a plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner*, 38 S.W.3d at 115. Appellants contend that, unlike the case before us, *Turner* did not involve a media defendant accurately reporting allegations of wrongful conduct. Rather, appellants argue, *Boyd* is dispositive here.

In *Turner*, a mayoral candidate, Sylvester Turner, brought a libel action against a news reporter and a television station based on the broadcast of a story questioning the role Turner played

-19-

in an attempted multi-million dollar life insurance scam. *Id.* at 109. Based on the jury's verdict, the trial court rendered judgment in favor of Turner. *Id.* at 113. The court of appeals reversed and rendered judgment for the defendants, concluding Turner did not present clear and convincing proof that the reporter or the television station acted with actual malice. *Id.* That judgment was affirmed by the supreme court. *Id.* In reaching its decision, the supreme court rejected the defendants' argument that Texas law does not recognize a cause of action for defamation based on a publication as a whole. *Id.* at 115. The supreme court reasoned "the omission of material facts or misleading presentation of true facts" can render an account "just as false as an outright misstatement." *Id.* Then, the supreme court examined the content of the broadcast in dispute and concluded that "by omitting key facts and falsely juxtaposing others, the broadcast's misleading account cast more suspicion on Turner's conduct than a substantially true account would have done." *Id.* at 118. However, unlike the case before us, *Turner* did not involve the reporting of third party allegations, and the supreme court did not address third party allegations in its analysis.

In *Boyd*, Samuel Boyd, a Dallas attorney, sued the Associated Press and other media defendants over two articles published after trial began in a federal civil lawsuit filed against Boyd in which the Securities Exchange Commission ("SEC") alleged he had helped a securities broker defraud investors. *Boyd*, 2005 WL 1140369, at *1. The articles noted that the broker had been convicted and was serving a five-year prison term. *Id.* However, neither article expressly stated that the SEC lawsuit against Boyd was a civil proceeding. *Id.* Boyd claimed the gist of the articles gave the false impression that the SEC was criminally prosecuting him for securities fraud by making untrue representations, omitting material facts and misleadingly juxtaposing events. *Id.* Appellants moved for summary judgment on Boyd's claims on both traditional and no-evidence grounds, and the trial court denied the motions. *Id.*

This Court reversed and rendered judgment that Boyd take nothing on his claims. This Court

stated in part

> [T]he "sting" of the articles of which [Boyd] complains was the accurate reporting of the SEC allegations of his participation in securities fraud and not the omission of whether it was a criminal or civil proceeding. Moreover, none of the cases cited by Boyd involved a media defendant accurately reporting allegations of wrongful conduct.
>
> Here, it is undisputed that Boyd had been accused of the unlawful conduct of participating in securities fraud. The forum in which those accusations were made, be it criminal or civil, did not materially affect the sting caused by the accurately reported allegations of Boyd's participation in a fraudulent scheme.

*Id.* at *3.

Larrea contends *Boyd* is "taken out of context" by appellants and does not apply to this case because "[h]ere the stories run were based on lies, not just on omitted information, which had been called to Appellants' attention before they were broadcast." However, as described above, the "lies" alleged by Larrea in this case are allegations of third parties that were being reported by appellants, and Larrea does not contend those allegations were reported inaccurately. Accordingly, we conclude as a matter of law that appellants did not create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way. *See id.*; *see also Neely*, 331 S.W.3d at 922; *Grotti*, 188 S.W.3d at 775; *UTV of San Antonio, Inc.*, 82 S.W.3d at 612; *KTRK Television*, 950 S.W.2d at 106.

We conclude the record before us contains no evidence as to the element of falsity respecting Larrea's claims. Therefore, we conclude the trial court erred by not granting appellants' motion to dismiss on the merits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005. We decide appellants' first issue in their favor. In light of our disposition of that issue, it is not necessary to address appellants' second issue.

### III. CONCLUSION

We conclude this Court has jurisdiction over this appeal. Additionally, we decide in favor of appellants on their first issue. We need not address appellants' second issue. We reverse the trial

court's order, render judgment dismissing this case pursuant to the TCPA, and remand this case to the trial court for consideration of damages and costs pursuant to TCPA section 27.009(a). *See id.* § 27.009(a).

<br>

DOUGLAS S. LANG
JUSTICE

111637F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

VIRGILIO AVILA AND UNIVISION
TELEVISION GROUP, INC., Appellants

No. 05-11-01637-CV     V.

F.B. LARREA, Appellee

Appeal from the 95th Judicial District Court
of Dallas County, Texas. (Tr.Ct.No. DC-11-
10828).
Opinion delivered by Justice Lang, Justices
Bridges and Richter participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's order, **RENDER** judgment dismissing this case pursuant to the Texas Citizens Participation Act, and **REMAND** this case to the trial court for consideration of damages and costs pursuant to section 27.009(a) of that act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (West Supp. 2012). It is **ORDERED** that appellants Virgilio Avila and Univision Television Group, Inc. recover their costs of this appeal from appellee F.B. Larrea.

Judgment entered December 18, 2012.

DOUGLAS S. LANG
JUSTICE