

# NUMBER 13-19-00555-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ARMANDO GAMBOA,
ANITRIA M. CARRASCO GAMBOA,
AND KEITH LIVESAY,                                                          Appellants,

v.

TESSA VARGAS AND
CHRISTOPHER VARGAS,                                                         Appellees.

On appeal from the 430th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Longoria**

Appellees Tessa Vargas and Christopher Vargas brought suit against appellants

Armando Gamboa and Anitria M. Carrasco Gamboa for breach of contract and various

other torts related to a real estate purchase agreement. The Vargases later added claims

for fraudulent transfer and civil conspiracy against the Gamboas' attorney, appellant Keith Livesay, related to the Gamboas transferring one-half of the real estate to Livesay. Appellants filed a motion to dismiss the Vargases' claims pursuant to the Texas Citizens Participation Act (TCPA), which was overruled by operation of law. In what we construe as a single issue, appellants argue that the trial court erred by failing to grant their motion to dismiss.[1] We affirm.

## I.  BACKGROUND

The Vargases contacted Armando, Tessa's cousin, to inquire about investing money in a rental property. The Gamboas agreed to sell a rental property they owned to the Vargases. Instead of hiring a real estate attorney, the parties downloaded a form from "Rocket Lawyer," a legal self-help website, to carry out the transaction. Under the agreement, which was executed on October 13, 2014, the Vargases agreed to transfer a portion of the monthly rental income they received to the Gamboas to be paid towards the mortgage, which was still under the Gamboas' name.

According to Tessa, the mortgage company sent a notice to the property address advising that no mortgage payments were made for the months of June, July, August, or September of 2015. Tessa asserts that when she confronted Armando about this, he admitted to not paying the mortgage. At this point, Tessa stopped forwarding payments to Armando. Tessa additionally asserted that she paid $4,400 to the Gamboas to have

---

[1] Appellants' brief does not contain an enumerated "Issues Presented" section. Instead, appellants' brief simply lists twenty-two questions, many of which relate to the trial court's failure to grant the motion to dismiss. Many other questions, such as, "Does constitute [sic] tortious interference with a contract require an actual contract, or a mere expectancy of a contract?" are relevant only to appellants' motion for summary judgment but then never mentioned again or elaborated on. Appellants do not challenge the trial court's ruling on their motion for summary judgment. Because appellants' sole prayer is to have their TCPA motion to dismiss granted, we treat that as their sole issue.

the property painted and repaired. However, Tessa claims that the Gamboas simply pocketed the money and never repaired or painted the property. On May 13, 2016, the Vargases brought suit against the Gamboas for fraud, breach of contract, and money had and received.

According to appellants, litigation devolved into an "unmitigated blood bath," resulting in both parties seeking sanctions. The Gamboas filed a no-evidence motion for summary judgment, arguing that the Vargases failed on thirty-three of the thirty-six elements of their causes of action. The Gamboas also filed a motion for summary judgment asserting that the Vargases could not recover punitive damages. The trial court denied both motions.

At this point, the Gamboas still had not conveyed the property to the Vargases as originally agreed upon. Instead, while the litigation was ongoing, the Gamboas conveyed a one-half interest in the rental property to Livesay. Upon learning of the transaction, the Vargases amended their petition on May 15, 2019, to include tort claims against Livesay, including claims for fraudulent transfer and civil conspiracy. The Vargases alleged that the Gamboas transferred one-half of the subject property to Livesay "with the intention of preventing [the Vargases] from recovering the subject property from [the Gamboas] pursuant to the contract and obstructing the pending suit regarding the subject property." The Vargases additionally filed a motion to disqualify Livesay, alleging that he was a witness, an advocate, and a litigant in the present suit.

In response, on May 21, 2019, appellants filed a TCPA motion to dismiss, asserting that the Vargases' new causes of action violated appellants' right to petition, right to

3

associate, and right of free speech. Appellants also sought sanctions against the Vargases. In their response, the Vargases argued that the TCPA motion was untimely filed as to the claims raised in their original petition. Additionally, the Vargases argued that even if it was timely filed, the TCPA statute did not apply. The Vargases also sought additional sanctions from appellants, arguing that appellants' TCPA motion to dismiss was frivolous.

The trial court denied appellants' motions for sanctions. Appellants' TCPA motion to dismiss was overruled by operation of law. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12).

## II.  MOTION TO DISMISS PURSUANT TO THE TCPA

In their first issue, appellants argue that the trial court erred by failing to grant their motion to dismiss. More specifically, appellants assert that they met their initial burden under the TCPA and that the Vargases failed in their respective burden.

## A.  Standard of Review

"The Texas Citizen's Participation Act (TCPA) protects citizens who [associate], petition or speak of matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011.[2] That protection comes in the form of a special motion to dismiss, subject to an expedited review, for "any

---

[2] Appellants filed this action prior to September 1, 2019, the date upon which the recent amendments to the TCPA went into effect. The prior, pre-amendment version of the TCPA therefore applies to appellants' claims and this appeal. *See* Act of May 20, 2019, 86th Leg., R.S., ch. 378, §§ 11–12, 2019 Tex. Sess. Law Serv. 684, 687. All of our citations and analyses are to the TCPA as it existed prior to September 1, 2019, unless otherwise noted. Nothing in this opinion should be read to express an opinion regarding the proper construction or application of any amended provision of the TCPA.

suit that appears to stifle the defendant's" exercise of those rights. *In re Lipsky*, 460 S.W.3d at 584.

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Lane v. Phares*, 544 S.W.3d 881, 886 (Tex. App.—Fort Worth 2018, no pet.). Specifically, we consider de novo whether each party has met its respective burden under the Act's dismissal mechanisms. *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 873 (Tex. App.—Austin Aug. 3, 2018, pet. denied). To the extent that resolution of the appeal turns on construction of the TCPA, we review that de novo as well. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). When construing the TCPA, as with any other statute, our objective is to give effect to the legislative intent, looking first to the statute's plain language. *Id*. If that language is unambiguous, "we interpret the statute according to its plain meaning." *Id*. Also, we construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b).

## B.    Applicable Law

The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Fawcett v. Grosu*, 498 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g). The TCPA is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no

pet.).

Section 27.003 of the TCPA provides that a party may move to dismiss a legal action that "is based on, relates to, or is in response to [that] party's exercise of" one of three rights: free speech, petition, or association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Reviewing a TCPA motion to dismiss requires a three-step analysis. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *Kassab v. Pohl*, __ S.W.3d__, __, 2020 WL 5552459, *3 (Tex. App.—Houston [1st Dist.] Sept. 17, 2020, no pet.). If the moving party meets that burden, then the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *In re E.I. DuPont de Nemours & Co*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam). If the nonmoving party satisfies that requirement, then the burden finally shifts back to the moving party to prove each essential element of any valid defenses by a preponderance of the evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

This appeal concerns the right of association, the right of free speech, and the right to petition. The act states that the exercise of the right of association "means to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id.* § 27.001(2). The act states that the exercise of the right of free speech "means a communication made in connection with a matter of public concern." *Id.* § 27.001(3). The act's definition of the "exercise of

6

the right to petition" is far more extensive:

"Exercise of the right to petition" means any of the following:

(A)    a communication in or pertaining to:

    (i)    a judicial proceeding;

    (ii)    an official proceeding, other than a judicial proceeding, to administer the law;

    (iii)    an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;

    (iv)    a legislative proceeding, including a proceeding of a legislative committee;

    (v)    a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;

    (vi)    a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;

    (vii)    a proceeding of the governing body of any political subdivision of this state;

    (viii)    a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or

    (ix)    a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

(B)    a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(C)    a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

7

(D)     a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E)     any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

*Id.* § 27.001.

## C.     Discussion

We first examine whether appellants, as movants, met their initial burden to show by a preponderance of the evidence that the Vargases asserted a "legal action" that is based on, relates to, or is in response to the movants' exercise of one of the three rights delineated in the TCPA: the right of free speech, the right to petition, or the right of association. *See id.* § 27.005(b); *Youngkin*, 546 S.W.3d at 679; *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 571 (Tex. App.—Fort Worth 2019, pet. denied).

In their motion to dismiss, appellants matter-of-factly assert:

This matter involves [appellants'] freedom of speech and right to associate. Likewise, this matter involves [appellants'] exercise of the right to petition; under the statute, the right to petition includes a communication in or pertaining to a judicial proceeding. Because [the] TCPA applies to Plaintiffs' claims, to continue, Plaintiffs possess the burden to present clear and specific evidence of each and every element of their causes of action.

(internal citations and quotations omitted). Attached to this motion was the affidavit of Livesay. In his "opinion as an expert," Livesay stated that the Vargases only added him as a party to the suit to "intimidate [him]" and to "prevent the effective prosecution of the case." According to Livesay, the tactic of adding causes of action against a party's attorney, in conjunction with filing a motion to disqualify said attorney, "is designed to

8

prevent a party from petitioning a court for relief." Thus, appellants argue that the Vargases' actions are clearly designed to interfere with appellants' rights of free speech, association, and petition.

The Vargases argue that appellants failed in their initial burden to demonstrate that their asserted legal action is based on, related to, or was made in response to the appellants' exercise of one of the three rights delineated in the TCPA. According to the Vargases, their newly added causes of actions against Livesay were not related to appellants' ability to communicate with or access the court. Rather, their causes of action were based on the commission of torts unrelated to those activities. Additionally, the Vargases argue that the Gamboas' transfer of the property to Livesay in violation of the Texas Uniform Fraudulent Transfer Act is not covered by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 24.005. We agree with the Vargases.

Regarding the right to petition, appellants assert that the Vargases, by adding the new causes of action against Livesay, sought to "prevent [appellants] from making any intelligent communication with the trial court, because they would be forced to represent themselves pro se." In other words, appellants claim that the Vargases added causes of actions against Livesay simply as a means to bankrupt appellants and prevent them from being able to afford legal representation moving forward. However, the only support for these allegations come from Livesay's own affidavit, which is conclusory and self-serving. More importantly, according to their petition, the Vargases' new causes of actions were related to the allegedly fraudulent transfer of the rental property to Livesay, not appellants' right to petition the court. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)

9

(observing that the plaintiff's petition is the "best and all-sufficient evidence of the nature of the action" to determine whether the TCPA applies). Moreover, we note that appellants' argument would lead to absurd results. If we followed appellants' reasoning, a party might be exposed to an anti-SLAPP motion to dismiss any time the legal fees to the other party became disagreeable.

Regarding the right of association, appellants have failed to demonstrate that the Vargases' causes of action were related to their right to "join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2). There is no common interest in committing civil wrongs, engaging in criminal behavior, or inflicting injury upon others. *See Kawcak*, 582 S.W.3d at 583. The court in *Kawcak* further warned that an overly broad reading of the TCPA would cause parties to suffer vexatious delays because "it would result in giving constitutional right of association protection to virtually any private communication between two people about a shared interest. That is an absurd result that does not promote the purpose of the Act." *Id.* In the present case, the Vargases' causes of action against Livesay relate to alleged torts committed by appellants in transferring half of the property that is the subject of the underlying suit to Livesay. The private association and conspiring of individuals to commit a fraudulent transfer is not covered by the TCPA. *See id.* More importantly, appellants have completely failed to demonstrate that their actions, which were allegedly the basis of the Vargases' claims, were related to a governmental proceeding or a matter of public concern. *See id.* Transferring half of the property to Livesay was a purely private affair and was not related

10

to a governmental proceeding.

Regarding the appellants' right of free speech, appellants have likewise failed to demonstrate that the Vargases' actions were related to "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" means a statement regarding: "(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." *Id.* § 27.007. Appellants claim that an attorney's legal services are a matter of public concern and cite *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, pet. denied) to support that proposition. However, *Avila* is distinguishable from the present case.

In *Avila*, a lawyer brought suit against a group of television companies for allegedly false and defamatory statements they had broadcasted concerning his legal services. *See id.* The television companies filed a motion to dismiss pursuant to the TCPA, arguing that the lawyer's lawsuit related to the companies' right of free speech. *See id.* The court of appeals concluded that the broadcasts were made in connection with the lawyer's legal services, which is an issue of public concern, and the broadcasts were the basis for the lawyer's lawsuit. *See id.* Therefore, the TCPA applied. *See id.* By contrast, in the present case, the basis for the Vargases' newly added causes of action was not a communication made in connection with Livesay's general legal services. Instead, the basis was the private communications between the appellants resulting in the transfer of one-half of the rental property to Livesay, which is hardly a subject of concern to the public.

11

Appellants additionally argue, without much elaboration, that their communications involved a matter of public concern because the rental property was a product in the marketplace. Prior to the 2019 amendment, the TCPA included issues related to "a good, product, or service in the marketplace" in its definition of matters of public concern. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(E). However, as the Supreme Court of Texas has observed:

> Given the "in the marketplace" modifier, the TCPA's reference to "a good, product, or service" does not swallow up every contract dispute arising from a communication about the contract. By referring to communications made in connection with goods, products, or services "in the marketplace," the definition confirms that the right of free speech involves communications connected to "a matter of *public* concern. . . . The words "good, product, or service in the marketplace," however, do not paradoxically enlarge the concept of "matters of public concern" to include matters of purely private concern. As explained above, the "in the marketplace" modifier suggests that the communication must have some relevance to a public audience of potential buyers or sellers.

*Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 134 (Tex. 2019). In rare cases, private conversations have been held to be covered by the TCPA. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); *Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015) (per curiam). However, these cases dealt with communications that held some "public relevance beyond the pecuniary interests of the private parties involved." *Creative Oil*, 591 S.W.3d at 136. Appellants have not demonstrated how any of the communications in the present case extend beyond the pecuniary interests of the private parties involved or how the transfer of half of the rental property to Livesay has any relevance to other potential buyers or sellers. *See id.*

12

In summary, under the zig-zagging burden of proof under the TCPA, appellants failed their initial burden to show by a preponderance of the evidence that the Vargases have asserted a "legal action" that is based on, relates to, or is in response to the appellants' exercise of the right of free speech, the right to petition, or the right of association. *See Tex. Custom Wine Works, LLC v. Talcott*, 598 S.W.3d 380, 383 (Tex. App.—Amarillo 2020, no pet.). Accordingly, the trial court did not err by failing to grant appellants' motion to dismiss pursuant to the TCPA. *See Lane*, 544 S.W.3d at 886. We overrule appellants' sole issue.

Because we conclude that appellants failed in their initial burden under the TCPA scheme, the burden never shifted to the Vargases to establish by clear and specific evidence a prima facie case for each essential element of their claims. *See id.* Therefore, we do not need to address appellants' arguments relating to whether the Vargases met their burden or whether appellants established an affirmative defense. *See* TEX. R. APP. P. 47.1.

## III.    CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Delivered and filed on the
15th day of April, 2021.

13