COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| LAKEWAY PSYCHIATRY & BEHAVIORAL HEALTH, PLLC, | § | No. 08-20-00144-CV |
| | § | Appeal from the |
| Appellant, | § | 200th Judicial District Court |
| v. | § | of Travis County, Texas |
| MICHELLE BRITE, | § | (TC# D-1-GN-19-008088) |
| Appellee. | | |

### O P I N I O N[1]

Appellant Lakeway Psychiatry & Behavioral Health (LPBH), an outpatient medical clinic, appeals the trial court's dismissal of its suit seeking declaratory relief, damages, attorney's fees and costs, and other related rulings thereto. The trial court granted Appellee Michelle Brite's motion to dismiss LPBH's lawsuit pursuant to the Texas Citizens Participation Act (TCPA), as well as her later motion to modify judgment, while also denying LPBH's motion for new trial.[2] We affirm the final judgment and the order modifying judgment.

---

[1] We hear this case on transfer from the Third Court of Appeals in Austin and apply that court's precedent as required by TEX. R. APP. P. 41.3.

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011. The Legislature amended the TCPA in 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. Because this case was filed on November 18, 2019, we apply the law applicable to actions filed on or after September 1, 2019.

# I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

On November 18, 2019, LPBH filed suit seeking declaratory relief regarding "a disagreement" with Appellee over its payment policies. LPBH described it did not accept insurance. Instead, it operated as a "cash-only business." LPBH further described that "[c]ustomers can still submit claims to their insurance company and LPBH will assist in those efforts." LPBH added, "should any insurance company provide funds to LPBH, LPBH immediately returns those monies to the patient."

LPBH contended it informed Appellee of its cash-only policy before she received treatment. On her visit to the clinic, it also presented her with a document titled, "Summary of Clinic Payment and Controlled Substance Policies for Lakeway Psychiatry and Behavioral Health (LPBH)," which she signed and dated before receiving treatment. Among the eight individually listed payment policies, the summary described the clinic as an out of network provider of medical services, that LPBH is not responsible for any insurance or claims reimbursements, and that psychiatric evaluations are $320 for a 55-minute session. LPBH acknowledged Appellee paid in full for the treatment she received.

By its lawsuit, however, LPBH alleged that Appellee had "complained to LPBH, alleging that LPBH wrongfully charged [Appellee] the full amount for the treatment and instead was supposed to charge some type of insurance rate to which Appellee would only have to pay a co-pay." LPBH further alleged Appellee "began a campaign to tarnish LPBH's reputation, including but not limited to posting false statements online concerning LPBH's billing practices." As a result, LPBH sought a declaratory judgment establishing "the contract signed by [Appellee] requires [Appellee] to pay the full amounts for the treatment she received and that LPBH is not required to

---

[3] Our summary of the facts is taken from the parties' pleadings, motions, and affidavits.

charge any insurance rates." The lawsuit requested an award of attorney's fees and costs, as well as damages of $100,000 or less.

Responding, Appellee generally denied LPBH's allegations. In turn, she asserted counterclaims against LPBH, along with a crossclaim against its owner, Ziba Rezaee M.D. Appellee alleged claims of violation of patient confidentiality, breach of fiduciary duty, breach of contract, and invasion of privacy.

LPBH then amended its petition to include a series of factual allegations in further support of its claim for declaratory relief. The live pleading described that Appellee had filed a complaint against Dr. Rezaee with the Texas Medical Board (TMB). LPBH described the complaint as alleging Dr. Rezaee had made a false insurance claim and she had engaged in unprofessional conduct. LPBH further described that Appellee's complaint alleged Dr. Rezaee overcharged for services. The complaint alleged Appellee was owed a refund of $160 due to an overpayment. LPBH asserted Dr. Rezaee had been informed by the TMB that no investigation would ensue because the board had determined that Appellee's allegations were unsupported.

LPBH alleged Appellee wrote a Google review about the circumstances despite knowing the TMB had found no objectionable conduct by Dr. Rezaee. That review included a photograph of Appellee and her full name. LPBH's live pleading included a portion of Appellee's posted review as follows:

**Lakeway Psychiatry and Behavioral Health, PLLC**
. . . Ranch Rd . . .

2 months ago

> This is an opinion based on the experience I had. I went to the facility for care since I had new insurance and I needed a new psychiatrist. I searched on my insurance website but the facility was listed as [an] in-network doctor. . . . Upon arriving at the facility[,] I had to fill out a stack of paperwork including a paper that talked about out of network payment. This was confusing and I asked questions—I was

3

told that claims could be submitted afterward and that many of their patients . . . do that. So even though I did sign this form it wasn't completely registering to me that I would not be receiving all of the reimbursement my insurance intended. . . .

LPBH alleged the posted review established "there remains a dispute over the proper charges assessed by LPBH and the construction of the contract signed by [Appellee]."

On January 31, 2020, Appellee filed a verified, combined plea to the jurisdiction and TCPA motion to dismiss. She asserted LPBH had filed a "baseless lawsuit . . . to bully a former mental health services patient into removing an online review the Plaintiff does not like." She noted she had paid in full for her treatment and LPBH's lawsuit had not even alleged that she posted a defamatory review. Appellee contended LPBH sought "to impose legal costs on its former patient by requesting a declaratory judgment on a non-issue—the meaning of a document the [Appellee] signed during an office visit that no longer [affects] either party." Appellee asserted the trial court lacked subject matter jurisdiction over LPBH's claim for declaratory relief because it failed to present a live case or controversy.

Appellee asserted she was no longer a patient at LPBH. She argued the form she signed was not a contract but a statement of LPBH's policies. Even if it was considered a contract, she further claimed it was fulfilled by both parties. She asserted she did not owe LPBH for any further charges, nor had she sought any money against it. Citing to provisions of the TCPA and the UDJA, Appellee asserted LPBH's declaratory claim should be dismissed as the trial court lacked subject matter jurisdiction and the suit amounted to a legal action based on or asserted in response to an exercise of her right to free speech or to her posting of a consumer review. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(b)(1)(A), (2); 27.010(b)(2); 37.004(b). She attached multiple exhibits to her motions to include screen shots of her insurance carrier's website identifying Dr. Rezaee as "in-network," an explanation of benefits she received from her insurance indicating it had paid

4

$160 to LPBH, as well as email and correspondence she and her attorney exchanged with LPBH and its attorney.

The trial court set a hearing for March 4, 2020, on the combined motion to dismiss and plea to the jurisdiction. Prior to the hearing date, Appellee nonsuited her counterclaims against LPBH and Dr. Rezaee.[4] On the date set, the trial court held a hearing on the motions. Without objection, Appellee offered into evidence an affidavit regarding attorney's fees with a redacted billing record attached. As the hearing ended, the trial court indicated it would take the matter under advisement. On April 13, 2020, the trial court rendered a final judgment granting Appellee's plea to the jurisdiction and TCPA motion to dismiss and dismissed the claims against Appellee. The trial court also ordered LPBH to pay attorney's fees to Appellee in the amount of $15,463.50.

On April 21, 2020, Appellee filed a motion to modify judgment to include conditional appellate fees. In turn, LPBH soon filed a motion for new trial and motion to modify judgment. LPBH asserted Appellee's TCPA motion to dismiss was overruled by operation of law on April 4, 2020, and the trial court's order was void. LPBH also challenged the basis for awarding attorney's fees as well as the amount awarded, and further asserted a justiciable controversy existed between LPBH and Appellee.

The trial court held a second hearing on May 14, 2020. Ultimately, the trial court rendered an order affirming its dismissal of LPBH's claim and its original award of attorney's fees, but otherwise modified the judgment. The order included the following statement: "[a]lthough the Court entered the Final Judgment more than thirty days after the hearing, the Court did so pursuant to the Texas Supreme Court's First (Misc. Dkt. No. 20-9042) Emergency Order Regarding the COVID-19 State of Disaster, which authorizes all courts in Texas to modify or suspend any and

---

[4] Dr. Rezaee is not a party to this appeal.

5

all deadlines proscribed by statute for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted, that period extending to and including April 13, 2020." The order also awarded conditional appellate fees to Appellee payable in the event of certain stages of an appeal.

This appeal followed.

## II.     ISSUES ON APPEAL

LPBH presents four related issues on appeal: (1) whether the trial court erred when it granted Appellee's TCPA motion to dismiss after the statutory deadline for ruling had passed; (2) whether the trial court erred in awarding trial attorney's fees; (3) whether the trial court erred in awarding conditional appellate attorney's fees; and (4) whether the trial court erred in finding there was no justiciable controversy.[5]

We group the issues by topic, addressing LPBH's first and fourth issue to start, as those two relate to the procedures and merits of a TCPA motion to dismiss. Our review of the second and third issue then follows as those issues both challenge the trial court's award of attorney's fees.

## III.     THE TEXAS CITIZENS PARTICIPATION ACT

### A. Standard of review

The trial court's determinations concerning whether the parties met their respective burdens of proof under the TCPA are reviewed de novo. *Dallas Morning News, Inc. v. Hall*, 579

---

[5] The trial court entered a general order granting Appellee's "Amended Plea to the Jurisdiction and TCPA Motion to Dismiss." Because the justiciability of LPBH's claim under the UDJA overlaps with LPBH's burden to establish a prima facie case of all declaratory relief elements under the TCPA, our analysis begins and ends with the issue assigned to the trial court's ruling on the TCPA motion to dismiss. We address the parties' arguments as they relate to the TCPA motion to dismiss but we do not reach any discussion on Appellee's plea to the jurisdiction. *See* TEX. R. APP. P. 47.1. (the written opinion of the court of appeals must be as brief as practicable but address every issue raised and necessary to final disposition of the appeal).

6

S.W.3d 370, 377 (Tex. 2019); *see Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). The amount of attorney's fees and sanctions awarded under the TCPA are reviewed for abuse of discretion. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016); *Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220, 232 (Tex. App.—Austin 2018, no pet.).

## B. Overview of the TCPA

The Texas Legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. To that end, § 27.003 of the TCPA provides for expedited dismissal of a legal action that is "based on, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) ("The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, [but] not to dismiss meritorious lawsuits.").

Specifically, the TCPA allows a defendant to file a motion to dismiss, usually within 60 days of being served with a lawsuit. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. A defendant invokes the TCPA by timely moving to dismiss a claim upon an initial showing, supported by a preponderance of the evidence, that the plaintiff's claim is based on, relates to, or is in response to the movant's exercise of a protected right. *Id.* § 27.005(b). If the defendant successfully makes that initial showing, the burden then shifts to the plaintiff to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." § 27.005(c). If the plaintiff makes its required showing, the TCPA then allows the defendant an opportunity to

"establish[] an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

Here, LPBH does not contest that Appellee met her initial burden of timely invoking the protections of the TCPA. Similarly, no affirmative defense is at issue. Rather, LPBH raises a procedural complaint about the timeliness of the trial court's ruling; and a merit-based complaint about the burden shifted to it under the second step of the analysis, arguing the trial court erred when it determined it had not met its burden to establish a prima facia showing regarding the justiciability of its UDJA claim.

We begin with the procedural challenge.

## IV.  DISCUSSION

### A.  The timeliness of the TCPA ruling

In its first issue, LPBH asserts the trial court erred by rendering its ruling on LPBH's motion to dismiss after expiration of the statutory deadline. LPBH argues the trial court could not retroactively modify or suspend the mandatory deadline based on an emergency order by the Supreme Court of Texas regarding the COVID-19 state of disaster. LPBH contends the trial court's dismissal order was void.

#### 1.  Applicable law

Once a TCPA motion has been filed, the hearing on the motion must be held within 60 days after the motion is served. TEX. CIV. PRAC. & REM. CODE ANN. § 27.004(a). This deadline can be extended for 90 days when the court's docket conditions require it, good cause exists, or the parties agree to an extension. *Id.* § 27.004(a), (b). If the trial court allows discovery, the hearing may also be extended for 120 days. *Id.* § 27.004(c).

8

Relevant to this case, § 27.005 of the TCPA provides that "[t]he court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(a). Ordinarily, this deadline is mandatory and gives the trial court no discretion to grant extensions of time. *Direct Commercial Funding, Inc. v. Beacon Hill Estates LLC*, 407 S.W.3d 398, 401 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Avila v. Larrea*, 394 S.W.3d 646, 656 (Tex. App.—Dallas 2012, pet. denied). When ruling, the trial court's only options are either dismiss or not dismiss the legal action. *Avila*, 394 S.W.3d at 656. If a court does not rule on the motion to dismiss within the time prescribed under § 27.005, "the motion is considered to have been denied by operation of law and the moving party may appeal." TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a).

Also, as relevant here, on March 13, 2020, the Supreme Court of Texas and Court of Criminal Appeals jointly issued a "First Emergency Order Regarding the COVID-19 State of Disaster" (Emergency Order), in response to Texas Governor Greg Abbott's issuance of a disaster proclamation. *See* Supreme Court of Texas, First Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket 20-9042, 596 S.W.3d 265 (Tex. 2020). The Emergency Order allowed all courts in Texas to "[m]odify or suspend any and all . . . procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted" if doing so "avoid[ed] risk to . . . parties, attorneys, . . . and the public . . . without a participant's consent[.]" *See id.*

## 2. The trial court's ruling

LPBH asserts the trial court's ruling deadline was mandatory under the TCPA. Responding to that argument, Appellee counters the trial court properly extended the deadline under the circumstances then existing. Both sides rely in part on a TCPA ruling from the Supreme Court of

9

Texas, *In re Panchakarla*, 602 S.W.3d 536 (Tex. 2020) (orig. proceeding) (per curiam). We necessarily begin our analysis with an overview of that cited authority.

### a. Overview of Panchakarla

Like this dispute, *Panchakarla* involved a contest over the proper application of the deadline for rendering a ruling on a TCPA motion to dismiss. *Id.* at 538. The hearing on the TCPA motion to dismiss concluded on February 18, 2019. *Id.* Four days later, the trial court signed an order granting the motion and dismissed the plaintiff's claims with prejudice. *Id.* The trial court's ruling was timely made within the 30-day statutory deadline. *Id.* Afterwards, however, plaintiff timely filed both a motion for reconsideration and a motion for new trial, arguing that new and controlling authority had been issued that was contrary to the court's disposition. *Id*. Ruling on those motions, the trial court vacated its prior order and denied the TCPA motion to dismiss. *Id.* at 539. The parties agreed that no stay order was in place and the order vacating the prior order was entered while the trial court retained its plenary power. *Id.* Still, the defendants appealed the denial of their motion and contemporaneously sought mandamus relief from the court of appeals. *Id.* The court of appeals agreed with defendants' argument contending the trial court had no power to vacate the first dismissal order and thereafter issue a second ruling vacating the dismissal. The court of appeals interpreted § 27.005(a) of the TCPA as requiring a ruling on a dismissal motion and all related motions within 30-days after a hearing. *Id.*

On further appeal, the Supreme Court of Texas disagreed and conditionally granted mandamus, ordering the court of appeals to vacate the conditional writ it had issued. *Id.* at 541. The Court concluded the trial court had timely ruled on the TCPA motion to dismiss and the statutory requirements were initially met. *Id.* at 540. The question then became whether the trial court maintained plenary authority to vacate a timely issued order after expiration of the TCPA's

10

ruling deadline. *Id.* On that issue, the Court found that no language within the TCPA spoke on that question. *Id.* at 541 ("nothing in the statutory scheme prohibits trial courts from vacating their own orders when they otherwise have plenary power to do so."). *Panchakarla* confirmed, "the TCPA does not impose a 30-day restriction on a trial court's authority to vacate a ruling on a TCPA motion to dismiss." *Id*. at 540. Applying that interpretation, the Court found:

> Here, once the trial court vacated its [first] order, as it had authority to do, no ruling on the dismissal motion was in place. Accordingly, the motion to dismiss was either overruled by operation of law for want of a timely ruling, *see* TEX. CIV. PRAC. & REM. CODE § 27.008(a), or [later] denied by the trial court in a new trial. In this procedural posture, we need not consider whether the trial court's order granting a new trial restarted the trial clock and permitted a new hearing and ruling on the dismissal motion, because even if it did not, the same result ensues. Whether the trial court properly denied the defendants' TCPA motion or whether it was overruled by operation of law on vacatur of the prior order, the defendants can seek relief by interlocutory appeal as the Legislature contemplated.

*Id.* at 541.

### b. *Analysis*

Relying on *Panchakarla*, Appellee contends that, even if her TCPA motion to dismiss was overruled by operation of law on April 4, 2020, nonetheless, the trial court retained plenary authority for 30-days thereafter as no interlocutory appeal had been filed nor a stay issued. *Id*. She argues *Panchakarla* had found that the TCPA only constrained "trial-court authority over TCPA orders in a very limited way" and the statute was otherwise "silent about a trial court's authority to reconsider either a timely issued ruling granting a TCPA motion to dismiss or a *timely order* denying such a motion when no interlocutory appeal [was] pending [emphasis added]." *Id*. at 540. As a result, Appellee argues the trial court retained its plenary power and properly dismissed LPBH's suit during that period. Countering, LPBH contends *Panchakarla* did not control nor overrule cases otherwise holding a trial court lacked authority to rule on a TCPA motion to dismiss *after* the expiration of the statutory deadline. *See In re Tabletop Media, LLC*, No. 05-20-00454-

11

CV, 2020 WL 2847272, at *2 (Tex. App.—Dallas June 2, 2020, no pet.) (mem. op.) (holding a trial court's ruling on the TCPA motion to dismiss 43 days after the motion hearing was void); *In re Neely*, No. 14-19-01018-CV, 2020 WL 1434569, at *4 (Tex. App.—Houston [14th Dist.] Mar. 24, 2020, no pet.) (mem. op.) (per curiam) (holding trial court's ruling on the TCPA motion to dismiss void when entered after the 30-day deadline). To a significant extent, we disagree with both parties' arguments.

Here, *Panchakarla* is distinguishable based on a difference in the procedural posture of the case. In *Panchakarla*, the trial court had rendered a *timely* order granting the TCPA motion to dismiss within the 30-day deadline. *Panchakarla*, 602 S.W.3d at 538. Thus, the question presented by the case asked whether the trial court could change that ruling any time afterwards during its plenary jurisdiction. *Id.* Differing from that posture, the trial court's ruling in this case was not timely made within the 30-day deadline. Thus, we conclude that *Panchakarla* is not controlling nor dispositive.

Yet, here, the trial court rendered its delayed ruling pursuant to the authority bestowed on courts by the first emergency order issued by the Supreme Court of Texas. As a result, we must consider what effect, if any, that authority had on the TCPA's ruling deadline.

Relevant here, the Emergency Order states:

2. Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:

> a. Modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted[.]

*First Emergency Order Regarding COVID-19 State of Disaster*, 596 S.W.3d at 265.

At the hearing on Appellee's motion to modify the judgment and LPBH's cross-motion for new trial, LPBH asserted the TCPA motion to dismiss had been overruled by operation of law, on April 4, 2020, and the trial court could not retroactively extend the deadline. Appellee countered by arguing the Emergency Order made it clear that the trial court had broad authority to modify the statutory deadline up to constitutional limitations. In ruling, the trial court stated as follows:

> The problem is, between March 4th and April 4th everything turned completely upside-down in my office. And I mean literally. We were the emergency judge when I wasn't even supposed to be in the state, right, I had to cancel everything and stay and be an emergency judge, and then we had to move everything to my house.
>
> The cases that I had under advisement that I had the obligation to review and decide and deal with on a timely manner, they got ignored while the judges had multiple meetings, day after day, trying to decide what to do, how to deal with this situation, what decisions to make for the operation of the courts as a whole. And that's why the 30 days went by, not because I intended to deny that claim.
>
> So under the circumstances I am going to rely on the Supreme Court's order to say that I was entitled to make that decision after the deadline and that the order tolled that deadline if I needed it to. So[,] I am going to deny the motion for a new trial.

In arguing the Emergency Order did not allow the trial court to rule on the TCPA motion to dismiss after the deadline, LPBH asserts: (1) the emergency order did not order the automatic suspension of all deadlines and it did not give the trial court authority to retroactively suspend or modify deadlines; (2) the trial court never took action to modify or suspend the 30-day deadline and neither party moved to have the deadline modified or suspended pursuant to the Emergency Order; and (3) *Panchakarla* was decided in May 2020 and applied the TCPA deadlines without mention of the pandemic. *Panchakarla*, 602 S.W.3d at 540. As to all three arguments, we disagree.

First, although *Panchakarla* was issued during the COVID-19 pandemic, the trial court's hearing and two later orders were not. *Id.* at 538. All relevant events occurred in 2019, well before the Supreme Court's issuance of emergency orders. Accordingly, *Panchakarla* yields no guidance on the Emergency Order's effect on TCPA deadlines. Contrary to LPBH's claim, however, several

13

courts of appeal have applied COVID-19 emergency orders to TCPA deadlines. *See, e.g.*, *Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353, at *2 (Tex. App.—Dallas Feb. 11, 2022, pet. denied) (mem. op.) (acknowledging a trial court's authority to extend 30-day deadline to rule on a TCPA motion to dismiss as a Texas Supreme Court Emergency Order gave the court authority to extend deadlines); *CBS Stations Group of Texas, LLC v. Burns*, No. 05-20-00700-CV, 2020 WL 7065827, at *3 (Tex. App.—Dallas Dec. 3, 2020, no pet.) (mem. op.) (holding the trial court was within its discretion, pursuant to the Texas Supreme Court's emergency order, to continue the hearing on a TCPA motion to dismiss); *Vertical Holdings, LLC v. LocatorX, Inc.*, No. 05-21-00469-CV, 2022 WL 130903, at *5 (Tex. App.—Dallas Jan. 14, 2022, no pet.) (mem. op.) (finding party's argument that inability to obtain a timely hearing on the TCPA motion to dismiss was due in part to the COVID-19 pandemic was not supported by the record and there was no information in the record to suggest the trial court suspended any TCPA deadlines as a result of the Texas Supreme Court emergency order). Accordingly, when supported by the record, we similarly hold the Emergency Order applies to extend a TCPA deadline. The only question remaining here is whether the record demonstrates that the trial court acted in accord with the Emergency Order.

Here, the trial court held the hearing on the TCPA motion to dismiss on March 4, 2020. Nine days later, on March 13, 2020, the Supreme Court issued the first emergency order pertaining to the state of disaster declared in Texas. *First Emergency Order Regarding COVID-19 State of Disaster*, 596 S.W.3d at 265. The trial court entered the order granting the TCPA motion to dismiss on April 13, 2020. Although the trial court did not mention the Emergency Order when rendering its April 13 judgment, at the subsequent hearing, it made it clear the disaster had impacted court operations and it had never intended to deny the motion to dismiss. In detail, the trial court

14

described the circumstances the court had undergone the immediate days following the March 4 TCPA hearing as a result of the COVID-19 shut down.

LPBH nonetheless asserts the trial court retroactively extended the deadline after it had already passed and after it had entered final judgment, essentially changing the rules "after the game has been played." *See Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 139 (Tex. 2010) (holding a statute that limited corporate successor liability for asbestos-related claims, as applied, violated the state constitutional prohibition against retroactive laws). We disagree. The record here supports the trial court's actions. The first Emergency Order was issued in the middle of the period between the hearing on Appellee's TCPA motion to dismiss and the expiration of the 30-day ruling deadline. During that period, the trial court dealt with the impact of disaster-related complexities, describing it had been faced with having "to decide what to do, how to deal with this situation, what decisions to make for the operation of the courts as a whole." We hold the record supports the trial court's reliance on the authority granted by the Emergency Order permitting the court to modify the TCPA ruling deadline and it entered a timely order granting the TCPA motion to dismiss.

We overrule LPBH's first issue.

## B. Justiciability of the claim

Next, we address LPBH's fourth issue where it asserts the trial court erred in finding there was no justiciable controversy between the parties.

### 1. LPBH's TCPA burden

After Appellee met her initial burden under the TCPA, LPBH was required to then establish, by clear and specific evidence, "a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). By its suit, LPBH only asserted a

claim for declaratory relief.[6] The UDJA provides that a "person[7] interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). "A declaratory judgment is appropriate when a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Wayne Dolcefino & Dolcefino Communications, LLC v. Cypress Creek EMS*, 540 S.W.3d 194, 201 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute." *ETX Successor Tyler v. Pridgeon*, 570 S.W.3d 392, 399 (Tex. App.—Tyler 2019, no pet.). Thus, to avoid dismissal under the burden shifting framework of the TCPA, LPBH needed to establish a prima facie case showing a justiciable controversy existed between it and Appellee, and the controversy would be resolved by the declarations sought. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

## 2. Analysis

LPBH asserts a controversy exists over the meaning of the contract with Appellee because of a disagreement as to (1) whether LPBH accepted insurance in lieu of payment, such that a contract rate applied as an in-network provider of Appellee's insurance company; (2) whether LPBH had refused to honor its alleged agreement with Appellee's insurance company; and (3) whether LPBH had any obligation to return monies received from an insurance company to Appellee. In support, LPBH attached the affidavit of one of its managers who testified, based on

---

[6] Damages are mentioned in passing in LPBH's live pleading, but no other claim beyond declaratory relief is included in the suit.

[7] Under this chapter, "'person' means an individual, partnership, joint-stock company, unincorporated association or society, or municipal or other corporation of any character." TEX. CIV. PRAC. & REM. CODE ANN. § 37.001.

Appellee's complaint to the TMB and her online reviews, "there is a dispute over the terms and validity of the contract that [Appellee] signed with LPBH, including the relationship of LPBH to insurance, what LPBH charged to [Appellee], and whether LPBH was following the provisions of its contract with [Appellee]." The manager testified that multiple disputes—i.e., whether LPBH was required to accept insurance and charge insurance rates, whether LPBH had any obligations with insurance, and whether Appellee was required to pay $320 for her initial visit—called into question the validity, enforceability, and scope of the contract. Additionally, LPBH's evidence included: (1) a web page of its policies and the policy form signed by Appellee; (2) a letter LPBH sent to Appellee informing her that Dr. Rezaee sees patients in other facilities where she bills insurances, but the clinic is only cash pay and will typically return any payments it receives from insurers back to the patients; and (3) a copy of the two reviews Appellee posted on Google and Yelp.

LPBH contends Appellee's multiple complaints are false, her complaints conflict with its interpretation of the contract, and she has refused to withdraw her statements or otherwise agree with LPBH's interpretation of the parties' agreement. LPBH asserts interpretation of the contract would resolve the parties' conflict. Lastly, LPBH urges that Appellee's position in which she argues—first, that she no longer questions the $320 charge; second, that she is not seeking a refund; and third, that she has no intent to use Dr. Rezaee or LPBH's services again—are not dispositive as they do not resolve the conflict because she refused to walk back her posted comments. We disagree with these arguments.

Interpreting the UDJA, the Supreme Court of Texas noted the statutory remedy "gives the court no power to pass upon hypothetical or contingent situations, or [to] determine questions not then essential to the decision of an actual controversy, although such questions may in the future

17

require adjudication." *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968), *superseded by constitutional amendment on other grounds as stated in Farmers Texas Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997). Moreover, courts must not decide cases that amount to no more than a disagreement as "mere difference of opinion, not involving the assertion of adverse interests, is not sufficient to support an action for declaratory judgment." *Securtec, Inc. v. Cnty. of Gregg*, 106 S.W.3d 803, 809 (Tex. App.—Texarkana 2003, pet. denied) (quoting *Reuter v. Cordes-Hendreks Coiffures, Inc.*, 422 S.W.2d 193, 196 (Tex. App.—Houston [14th Dist.] 1967, no writ)). Here, we conclude that LPBH's allegations all center on its request for Appellee to agree with its interpretation of a fully performed, implied contract for services. This is not a controversy that a declaration from the trial court will resolve. Appellee has not yet contested LPBH's charges, either through her insurance or through a court of law. The possibility that she might one day file suit to collect money does nothing to raise a controversy at this stage of the suit. *Stein v. First Nat'l Bank of Bastrop*, 950 S.W.2d 172, 175 (Tex. App.—Austin 1997, no writ) (per curiam). The evidence here shows that Appellee at most posted a review expressing her opinion, which is the only basis for LPBH's complaint. LPBH, however, does not contest the trial court's implied ruling that Appellee met her initial burden to show the legal action alleges an act that is protected by the right of free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1)(A). As a result, the burden had shifted to LPBH to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." *See id.* § 27.005(c). We hold that LPBH failed to meet its burden to establish a prima facie case of a justiciable controversy existing between the parties, which is an essential element of the UDJA claim. *See id*. §§ 27.005(c), 37.004(a).

We overrule LPBH's fourth issue.

18

## V.  ATTORNEY'S FEES

The trial court's final judgment rendered on April 13, 2020, ordered LPBH to pay Appellee's attorney's fees in the amount of $15,463.50, pursuant to §§ 27.009(a)(1) and 37.009 of the Texas Civil Practice and Remedies Code. On May 22, 2020, the trial court then entered an order modifying the judgment. In doing so, the trial court modified the final judgment to include conditional attorney's fees recoverable should LPBH later pursue an unsuccessful appeal. In its briefing with this Court, LPBH addresses issues two and three together, presenting several arguments challenging the awards of trial attorney's fees and conditional appellate attorney's fees.

We address each issue in turn.

### A.  Trial attorney's fees

In its second issue, LPBH asserts the trial court erred in awarding Appellee trial attorney's fees because (1) the trial court did not have authority to order the fees, and (2) the amount awarded was not reasonable and necessary.

#### 1.  Authority to grant

LPBH asserts the trial court erred in awarding Appellee attorney's fees for three reasons. First, LPBH asserts because Appellee's TCPA motion to dismiss was denied by operation of law, fees were not recoverable under § 27.009(a)(1) of the Texas Civil Practice and Remedies Code (providing for mandatory attorney's fees under the TCPA). Because we concluded in the first issue that the trial court's granting of Appellee's TCPA motion to dismiss was not done in error, we overrule this argument.

Second, LPBH asserts the trial court could not award attorney's fees under § 37.009 (providing for reasonable and necessary attorney's fees that are equitable and just under the UDJA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Specifically, LPBH asserts Appellee

19

never requested attorney's fees pursuant to § 37.009 of the Texas Civil Practice and Remedies Code in her pleadings. In Appellee's first answer and counterclaim, her prayer requested reasonable attorney's fees and expenses. Appellee asserts her request for attorney's fees contained in her original answer was pursuant to those recoverable under the UDJA because she had not yet filed a TCPA motion to dismiss. The UDJA provides: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The plain language of the UDJA authorizes courts to award equitable and just fees in *any proceeding* under the Act; it does not require the trial court to consider or render judgment on the merits of that claim. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). Appellee argues her pleadings contained a sufficient request for attorney's fees and no specific request under the UDJA was otherwise required when the action arose from LPBH's request for declaratory relief. We agree. *See Zurita v. SVH-1 Partners, Ltd.*, No. 03-10-00650-CV, 2011 WL 6118573, at *8 (Tex. App.—Austin Dec. 8, 2011, pet. denied) (mem. op.) ("The question, then, is not whether the Landlord's pleadings include a specific request for attorneys' fees under the UDJA, but whether the action between AZR and the Landlord was one 'under this chapter,' i.e., whether it was a declaratory judgment action. It is undisputed that AZR sought declaratory relief against the Landlord under the UDJA. Thus, the trial court was authorized to award attorneys' fees to any party with pleadings requesting them.").

Lastly, LPBH asserts the trial court lacked jurisdiction to award attorney's fees under § 37.009 of the Texas Civil Practices and Remedies Code because it granted the plea to the jurisdiction. LPBH asserts that because the trial court determined it lacked jurisdiction over the declaratory judgment claim, the case was final as to the declaratory judgment claim and the trial court could not grant attorney's fees under § 37.009. LPBH cites no authority to support this

20

contention. Even so, we conclude the trial court's conclusion that it lacked jurisdiction does not alter the nature of the proceedings as an action seeking declaratory relief.

Accordingly, the trial court also retained the authority to award attorney's fees under the UDJA. *See Zurita*, 2011 WL 6118573, at *8.

## 2. Reasonable and necessary attorney's fees

LPBH next argues that, even if the trial court did have the authority to award attorney's fees, the amount awarded was erroneous for two reasons: (1) the trial court failed to account for Appellee's miscalculation of fees; and (2) the total amount was excessive and did not meet the reasonableness standard.

### a. Standard of review

The TCPA requires the court to award reasonable attorney's fees to a successful movant. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a). A "reasonable" attorney's fees award "is one that is not excessive or extreme, but rather moderate or fair." *Sullivan*, 488 S.W.3d at 299 (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010)). The determination of "reasonable attorney's fees" rests within the trial court's sound discretion and reasonableness of attorney's fees as authorized by statute is a fact question. *Id.*; *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019).

Our review of an award of reasonable attorney's fees requires that we determine whether there was sufficient evidence to support the award. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). We look to "(1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of that discretion." *See Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). The first

21

inquiry requires us to review the sufficiency of the evidence. *Id.* We will sustain a legal sufficiency challenge if: (1) there is a complete lack of evidence of a vital fact, (2) we are barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a scintilla of evidence offered to prove a vital fact, or (4) the evidence conclusively establishes the opposite of the vital fact. *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 783 (Tex. 2020). The second inquiry asks whether, based on the evidence before it, the trial court made a reasonable decision. *Zeifman*, 212 S.W.3d at 587.

### b. *Evidence on attorney's fees*

At the hearing on the TCPA motion to dismiss and plea to the jurisdiction, the trial court admitted into evidence an affidavit from Peter D. Kennedy, Appellee's lead attorney, who testified as to the reasonable hourly rates for attorneys in the Austin area with similar experience. Additionally, Appellee attached billing records to the affidavit establishing the services performed, time spent, and associated fees. Attorney Kennedy explained that all fees for Appellee's counterclaims, that had since been nonsuited, were redacted from the fees exhibit. Kennedy attested that, based on the billing records and anticipated incurred time, the requested fees were reasonable and necessary in defending against the lawsuit.

LPBH did not object to admission of the evidence. Instead, LPBH questioned the total amount requested because it asserted Appellee failed to reduce the total requested by the redacted amounts she was no longer requesting. Addressing the court, LPBH's counsel argued, "what happens is they black out and say, we're not requesting these fees, but then when you get to the hours and fees at the end they don't reduce it." As to the reasonableness of the fees, LPBH's attorney, Kevin Terrazas, provided sworn testimony. Terrazas opined that, as a 13-year civil trial and board-certified appellate attorney, the fees being requested were not reasonable and necessary

22

because what they requested was not on the time sheets. Terrazas averred that Appellee had failed to reduce the total amount by the incurred fees on the plea to the jurisdiction. Also, he testified attorney Kennedy's rate of $515 an hour is "exceptionally high for this type of engagement," and the associates rates of $275 and $295 were "beyond what is the norm for something like this."

A party seeking attorney's fees must prove the amount and reasonableness of the fees sought. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762-63 (Tex. 2012). "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture*, 578 S.W.3d at 498. The proof presented must be sufficient to permit a court "to perform a meaningful review of their fee application." *Sullivan*, 488 S.W.3d at 299 (quoting *El Apple I, Ltd.*, 370 S.W.3d at 762-63). The fact finder multiplies the number of reasonable hours worked by the applicable rate, the product of which is the base fee or lodestar. *Rohrmoos Venture*, 578 S.W.3d at 498. There is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be awarded to the prevailing party. *Id.* at 499. The trial court engages in the second step of the lodestar method—adjusting the base calculation up or down based on relevant considerations—only if a fee claimant seeks an enhancement and produces specific evidence to support it or if a fee opponent seeks a reduction and produces specific evidence to support it. *Id.* at 500-01.

LPBH attacks the amount of the trial court's award on two bases. First, LPBH contends the amount is unreasonable due to the rates at which Appellee was billed and for the different tasks which she was billed. Specifically, LPBH argues the billing rate was supported only through conclusory statements and that a prior case shows the rate is unreasonable. In a letter to the trial

court, Appellee pointed to a recent case defended by the same law firm where Appellee's attorney is a partner. Appellee argued the authority was useful on the issue of attorney's fees. On appeal, LPBH asserts the case contradicts Kennedy's assertion that his hourly rate is reasonable because the partner in that case typically charged between $420 and $460 an hour but actually charged $333.75 an hour. *Joselevitz v. Roane*, No. 14-18-00172-CV, 2020 WL 1528020, at *7 (Tex. App.—Houston [14th Dist.] Mar. 31, 2020, no pet.) (mem. op.). LPBH also asserts the specific tasks billed for and amounts associated with each were unreasonable as Appellee did not use billing judgment. *See El Apple I*, 370 S.W.3d at 762. However, LPBH's argument fails to show Appellee did not meet her burden to prove reasonable and necessary attorney's fees. Here, attorney Kennedy's affidavit applies the lodestar method for calculating fees, which he attested to the reasonable hourly rates for him and his associates with accompanying billing records that identified the particular services, who performed the services, when the services were approximately performed, and the reasonable amount of time required to perform the services. LPBH did not present evidence to controvert the reasonableness of either the hours worked or the applicable rates, absent its attorney's opinion. The trial court, as the trier of fact, was able to take the testimony of Appellee's attorney and exclude LPBH's opinions. Also, LPBH fails to provide a meaningful analysis or supporting authority showing these expenses were excessive or not recoverable.

Secondly, LPBH attacks the total sum and contends that Appellee failed to reduce the fees by redacted amounts that were included in the total. The record shows that immediately after the TCPA motion to dismiss and plea to the jurisdiction hearing, Appellee's attorney sent the trial court a letter indicating they "triple-checked the math" in the attorney's fees affidavit and discovered a small error. Appellee's attorney stated, "[t]he total of fees should have been

24

$14,588.00, not $15,463.50, a difference of $875.50." He further explained "the difference represents two time entries (drafting the Answer and reviewing discovery served by the plaintiff), the descriptions of which were inadvertently omitted, so their amounts should not have been included in the total." The trial court then entered judgment awarding attorney's fees in the amount of $15,463.50. LPBH asserts it was error for the trial court to include the amounts because Appellee conceded it was in excess due to an improper calculation. Appellee responds that no blacked-out entries were ever included in the total, but rather two entries were blacked out inadvertently, but the amounts still included. Appellee takes the position that, given the trial court was provided with the description of work, it correctly included the amount in its fee award.

We conclude the trial court did not err in its award of trial attorney's fees given that Appellee subsequently explained and identified the missing costs that were included in the total but not earlier shown on the billing records. Based on the record before us, we conclude the evidence was sufficient to support the trial court's award of $15,463.50, and the award was reasonable and necessary.

Accordingly, we overrule LPBH's second issue.

### B. Conditional appellate attorney's fees

Finally, in LPBH's third issue, it asserts the trial court erred in awarding conditional appellate attorney's fees to Appellee because she did not provide sufficient justification for the fees. The trial court's modified judgment ordered, if LPBH unsuccessfully appealed the judgment, Appellee will additionally recover: $20,000 in the event of an appeal to the Court of Appeals requiring briefing; $10,000 if in the event of an oral argument in the Court of Appeals; $10,000 in the event of a response to a petition for review to the Texas Supreme Court is requested; $20,000 in the event of briefing on the merits at the Texas Supreme Court; and $10,000 in the event of oral

argument in the Texas Supreme Court. LPBH asserts Appellee did not provide any basis for the requested fees other than conclusory statements.

Proving a claim for conditional appellate fees differs from proving a claim for trial fees. *Yowell*, 620 S.W.3d at 355. A party must offer expert testimony "about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* Here, attorney Kennedy testified, in an affidavit regarding attorney's fees and costs, about his hourly rate and that it was consistent with fees charged by attorneys with comparable experience and expertise. In addition to the hourly rate, Kennedy testified to the conditional attorney's fees requested:

- In the event of an appeal to the Court of Appeals requiring briefing: an additional $30,000;
- In the event of oral argument in the Court of Appeals: an additional $10,000;
- In the event of a Petition for Review to the Texas Supreme Court filed by the Defendant: an additional $10,000;
- In the event of a request for a Response to a Petition for Review to the Texas Supreme Court filed by the Plaintiff: an additional $10,000;
- In the event of merits briefing in the Texas Supreme Court: an additional $30,000;
- In the event of oral argument in the Texas Supreme Court: an additional $10,000.

LPBH argues the evidence presented in this case was insufficient because Appellee's attorney did not explain who would work on the appeal, the estimated hours, reasonable hourly rates, or any specific services that would be rendered, citing to a Dallas Court of Appeals case. However, the case is distinguishable in that there, the attorney testified the fee "for handling an appeal to the [court of appeals] is $30,000" and that a fee for preparing or responding to an appeal to the Texas Supreme Court would be $25,000. *KBIDC Investments, LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *23 (Tex. App.—Dallas Oct. 9, 2020, pet. denied)

(mem. op. on reh'g).[8] For this reason, and because the attorney did not provide the reasonable hourly rate, the Fifth Court of Appeals concluded the evidence was insufficient to support the conditional attorney's fees. *Id.* at 24.

Here, Kennedy's testimony addressed the reasonable hourly rate that would be charged for the appellate services. Additionally, he did in fact "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal[.]" *Yowell*, 620 S.W.3d at 355; *see also Eichhorn v. Eichhorn*, No. 03-20-00382-CV, 2022 WL 1591709, at *15 (Tex. App.—Austin May 20, 2022, no pet.) (mem. op.) (concluding attorney's testimony addressed the reasonable hourly rate he would charge for the appellate services listed, and the trial court could reasonably infer from the evidence what appellate services would reasonably be necessary, and thus the testimony met the standard set forth in *Yowell* for conditional awards). Differing from the cited case, Kennedy testified to the amounts requested for each stage in the appeal with the Court of Appeals and with the Texas Supreme Court, differing between appellate services such as briefing and oral argument.

LPBH's assertion that evidence of who would work on the appeal, estimated hours, or specific services was required is unsupported. Rather, in its judgment the trial court reasonably inferred from the evidence presented the appellate services that would reasonably be necessary in the event of various stages of an appeal. We conclude the evidence was sufficient to support the award of conditional appellate fees. We overrule LPBH's third issue.

---

[8] LPBH's brief cites to the withdrawn and superseded opinion by the Fifth Court of Appeals. *See KBIDC Investments, LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 3481658, at *24 (Tex. App.—Dallas June 26, 2020), opinion withdrawn and superseded on denial of reh'g, No. 05-19-00159-CV, 2020 WL 5988014 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op. on reh'g). The opinion was withdrawn and superseded after the filing of LPBH's opening brief, but we note that the court's analysis and conclusion on the conditional attorney's fees issue remained the same.

## VI.     CONCLUSION

We affirm the trial court's final judgment and order modifying judgment.   We award in our judgment the conditional appellate attorney's fees as found by the trial court.


GINA M. PALAFOX, Justice

November 15, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.